STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 138-9-14 Vtec |

| | |
|---|---|
| Waterfront Park Act 250 Amendment | DECISION ON MOTIONS |

**Decisions on Cross-Motions for Summary Judgment**

This matter relates to the Waterfront Park located along Lake Champlain in Downtown Burlington, Vermont (the Park). The City of Burlington (the City) obtained an Act 250 Land Use Permit for Waterfront Park in 1990 (Permit #4C0863). In 1994, the City applied for and received an Act 250 Permit Amendment in order to host festivals and other public events at the Park (Permit #4C0863-1). As a part of that Permit Amendment, the District # 4 Environmental Commission (the Commission) imposed certain conditions related to noise levels and the number, frequency, duration, and season for events at the Park. In November 2012 the City filed an application to further amend the Act 250 Permit to modify those conditions and make additional alterations to the lighting, location of the bike path that runs through the Park, water and electrical utilities, and stormwater design. Neighboring property owner Allison Lockwood (Appellant) opposes modification of the conditions imposed by the 1994 Permit Amendment and appeals the Commission's approval of the permit amendment.

This decision considers cross-motions for summary judgment on Question 1 of Appellant's statement of Questions. Question 1 asks: "as a preliminary matter, is the City of Burlington entitled to seek an amendment of Conditions #12, #14, #18, #19, and #20 of Act 250 Permit #4C0863-1 under the *In re Stowe Club Highlands* analysis and Rule 34(E) of the Natural Resources Board Act 250 Rules?" Appellant is represented in this appeal by Hans G. Huessy, Esq. and Liam L. Murphy, Esq.; the City of Burlington is represented by Elizabeth H. Catlin, Esq., Brian S. Dunkiel, Esq., and Geoffrey H. Hand, Esq.; and the Natural Resources Board is represented by Gregory J. Boulbol, Esq.

For the sole purpose of putting the pending motions into context the Court recites the follow facts which are undisputed:

**Factual Background**

1. In 1990 the City obtained Land Use Permit # 4C0863 for Waterfront Park in the City of Burlington, Vermont.

2. In the summer of 1993 the City held 13 events at Waterfront Park. A few additional events may have been held at the Park during the summers between 1990 and 1993.

3. In December 1993, the City applied for an amendment to Land Use Permit # 4C0863 to allow for hosting festivals and other public events at the Park.

4. In February 1994, the District # 4 Environmental Commission issues the amended permit, # 4C0863-1 (the 1994 Amended Permit).

5. During the 1994 Amended Permit proceedings, the Commission considered the impacts on the neighboring residents caused by noise and traffic from the events.

6. The Commission imposed 26 conditions on the 1994 Amended Permit, some of which were related to maximum sound levels caused by events at the Park, when and where to measure those sound levels, and the timing and number of events.

7. The City recognized at the time that Waterfront Park was a dynamic area and that there would likely be an expansion in both residential and commercial development in the area in the future.

8. Allison Lockwood purchased her residential property at 200 Lake Street # 2 in August 2008. Ms. Lockwood knew of the permit conditions imposed by the 1994 Amended Permit and relied on the sound related conditions in deciding to purchase her property.

9. Ms. Lockwood purchased her property knowing that festivals and other public events were held at Waterfront Park, but understood that 1994 Amended Permit placed limitations on the number, timing, and frequency of events.

10. Both noise and traffic from events at Waterfront Park may impact Ms. Lockwood's use and enjoyment of her property.

11. In the more than 20 years since the 1994 Amended Permit there has been significant additional development in the area surrounding Waterfront Park. This includes both residential and commercial development.

12. A number of signature events held at Waterfront Park, particularly the Burlington Discover Jazz Festival, the KeyBank Vermont City Marathon, the Vermont Brewer's Festival, the Dragon Boat Festival, and other events have been extremely successful and have become central elements of City and regional cultural life. These events and others held at Waterfront Park attract over 185,000 visitors to downtown Burlington each year and create significant economic activity.

13. In 2013, the City Council of Burlington adopted a planning document titled "PlanBTV" establishing the City's development goals for downtown Burlington and the Waterfront. PlanBTV includes goals of increasing the use of Waterfront Park for civic and cultural events and festivals while minimizing impacts on surrounding residential neighborhoods.

14. The City's 2014 Municipal Development Plan also mentions the signature events held at Waterfront Park and encourages efforts to support arts and entertainment within the City.

15. The City now seeks to amend Conditions 12–20 of the 1994 Amended Permit to allow for events to be held at Waterfront Park year round, to update the maximum sound levels, monitoring procedures, and alter the limitations on the duration, frequency, and timing of events.

## Analysis

The sole legal issue raised in the cross-motions for summary judgment is whether the City is barred from seeking a permit amendment to alter Conditions 12, 19, and 20 of the 1994 Amended Permit. Appellant argues that Rule 34(E) precludes the amendment of those conditions and ask for judgment in her favor. The City opposes summary judgment in Appellant's favor. The NRB has cross-moved for summary judgment arguing that based on the undisputed facts, the City is entitled to seek the amendment, and therefore, Question 1 should be answered in the City's favor allowing this matter to proceed to the merits of the amendment

3

application. The NRB also argues that Appellant is precluded from arguing that the City is not entitled to a permit amendment based on a settlement agreement, entered as a judicial order by this Court, in a related matter. The City has filed a memorandum in support of the NRB's cross-motion. We first address the NRB's preclusion argument, and then undertake the Rule 34(E) analysis.

I. **Whether Appellant is Precluded from Challenging the City's Ability to Seek a Permit Amendment**

Claim preclusion, also called res judicata, "bars litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter, and causes of action are identical or substantially identical." Kellner v. Kellner, 2004 VT 1, ¶ 8, 176 Vt. 571 (quoting Lamb v. Geovjian, 165 Vt. 375, 379–80 (1996). Specifically within the context of a stipulated settlement, the Vermont Supreme Court has recognized that settlement agreements "save the judicial system valuable time and money by freeing trial judges to focus on those disputes that litigants are unable to resolve themselves. They also permit litigants greater control over the disposition of their cases because they represent the result of the bargaining process." Id. at ¶ 10. As such, the Court disapproved a collateral attack on a stipulated settlement, noting that allowing such an attack would deter use of stipulated settlement orders "out of fear that they will not be given the preclusive effect of judgments drafted exclusively by the trial court. Furthermore, litigants could settle cases in bad faith with the knowledge that they could wait to deploy any legal arguments against the settlement until such time as the other party attempts to enforce its terms." Id.

In the pending matter, the City and Appellant were both involved in an appeal before this Court of an Act 250 jurisdictional opinion involving property adjacent to Waterfront Park, In re Moran Plant Act 250 Jurisdictional Opinion #4-228, No 34-2-12 Vtec. That matter related to Act 250 jurisdiction over a parcel of land immediately north of Waterfront Park that came under City ownership and control after the Waterfront Park Act 250 permit had been issued. The parties to that appeal are the same as are now before the Court: Appellant Allison Lockwood, the City of Burlington, and the Natural Resources Board. To resolve the case, the parties signed and submitted a Stipulation, Findings of Fact, Conclusions of Law, and Judgment Order, which this Court signed and entered as a Court Order on September 17, 2014.

4

Paragraph 32 of that Order states: "Within 60 days of the Court's entry of this Judgment Order, Burlington shall apply for an amendment to the existing Waterfront Park permit (LUP #4C0863) concerning the uses and management of the Waterfront Park." The amendment application required by the Court's September 17, 2014 Order is the application now before the Court.

The NRB argues that because Appellant signed the stipulated settlement order requiring that the City apply for a permit amendment, Appellant cannot now argue that such an amendment application is barred. In response Appellant argues that "the issue litigated in the prior matter has nothing to do with the issue presently before the Court" and that "[p]aragraph 32 of the JO Order merely stated that the City would apply for an amendment to the Permit. It did not state that Ms. Lockwood could not contest the proposed amendment, and it did not state that the proposed amendment would be exempt from Rule 34(E)." (Appellant's Reply in Support of Mot. for Summ. J. at 13–14, filed Jan. 9, 2015).

In reviewing the pleadings, we find that material facts are in dispute as to whether the amendment application required by the parties' stipulated settlement order was specifically related to the conditions at issue in this appeal and whether the settlement contemplated that Rule 34(E) would not apply. Based on the limited evidence, we are inclined to agree with the NRB. It would be akin to the bad faith negotiation alluded to by the Supreme Court in Kellner to allow Appellant to argue that the City is legally prohibited from seeking a permit amendment if Appellant signed a stipulated settlement order providing that the City must apply for that same amendment. We need not resolve this issue, however, as we conclude below that Rule 34(E) does not preclude the City from seeking an amendment to the conditions contained in Act 250 Permit 4C0863-1.

## II.    Rule 34(E) Analysis

Under Act 250 Rule 34(E), which codified the Vermont Supreme Court's analysis in In re Stowe Club Highlands, an applicant may be precluded from amending conditions in a final and binding Act 250 land use permit. 166 Vt. 33, 38–40 (1996); 16-5 Vt. Code R. § 200:34(E). One goal of limiting the ability to seek permit amendments is to ensure that the grant of an Act 250 permit is not "merely a prologue to continued applications for permit amendments." Stowe Club Highlands, 166 Vt. at 39. Where, however, justification exists for the amendment

application, the Commission, and this Court on appeal, must consider whether the amendments comply with Act 250. As the Environmental Board noted, "Act 250 permits are written on paper, not carved in stone, and the relitigation concepts embodied in [Rule] 34(E)(2) cannot be considered to be unconditionally ironclad, as, in some sense, *every* permit amendment application is a relitigation of an initial permit condition." Re: Dr. Anthony Lapinsky and Dr. Colleen Smith, Nos. 5L1018-4 and 5L0426-9-EB, Findings of Fact, Conclusions of Law, and Order, at 18 (Vt. Envtl. Bd. Oct. 3, 2003).

Determining whether an applicant is entitled to seek an amendment requires a three-step analysis. The first step in the analysis focuses on the nature of the permit condition at issue, specifically "whether the applicant proposes to amend a permit condition that was included to resolve an issue critical to the issuance of the permit. This determination shall be made on a case-by-case basis." 16-5 Vt. Code R. § 200:34(E)(1). If the condition was not included to resolve a critical issue, then the applicant is entitled to seek an amendment.

Next, if the condition was critical to the issuance of the permit, we must "consider whether the permittee is merely seeking to relitigate the permit condition or to undermine its purpose and intent." Id. at § 200:34(E)(2). If the applicant is only seeking to relitigate or undermine the condition, the analysis ends and the applicant is not entitled to seek an amendment.

Finally, in determining whether an applicant may seek a permit amendment, the Court must weigh the competing goals of finality and flexibility based on an enumerated list of factors.

> In balancing flexibility against finality, the district commission shall consider the following, among other relevant factors:
> (a) changes in facts, law or regulations beyond the permittee's control;
> (b) changes in technology, construction, or operations which necessitate the need for the amendment;
> (c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;
> (d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;

(e) manifest error on the part of the district commission, the environmental board, or the environmental court in the issuance of the permit condition; and

(f) the degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by the district commission, the environmental board, the environmental court, parties, or any other person who has a particularized interest protected by 10 V.S.A. Ch. 151 that may be affected by the proposed amendment.

Id. at § 200:34(E)(4). The Court will thus determine, on a case by case basis, whether flexibility in the permitting process is warranted or whether finality is needed.

i. Condition 12

The first condition raised in Appellant's Statement of Questions and Motion for Summary Judgment is Condition 12. Condition 12 of the 1994 Permit Amendment states:

The Parks and Recreation Commission shall create an Advisory Event Selection Committee that shall include representatives of the Parks and Recreation Commission, the Parks and Recreation Department, event producers, a representative of the 216 Lake Street building, and one other resident or business owner in the Lake Street area. The role of the Event Selection Committee shall be to consider and recommend specific events and schedules for events to mitigate the impact of large events and amplified music on the residential neighbors, by spacing the schedule of the larger Class I events, identifying the location of tents and ensuring that during events where amplified music will be occurring lasting longer than 6 hours there will be scheduled breaks so that there are quiet periods. The Event Selection Committee shall recommend events based on the rules for waterfront park use adopted by the Parks and Recreation Commission.

(Land Use Permit 4C0863-1 at 3, filed Nov. 21, 2014 as Exhibit 2). This condition merely reflects a policy procedure for selection of events. Although Condition 12 discusses consideration of mitigating impact in the selection process, it does not set any specific requirements related to any of the 10 Act 250 Criteria. We therefore conclude that Condition 12 was not critical to the issuance of the 1994 Permit Amendment and therefore the City is free to seek an amendment to that condition.

7

ii.     Condition 19

Condition 19 is the primary condition at issue in these motions and this appeal. It states:

> The following rules shall apply to events held in the park, unless the Permittee secures written permission from the District Commission to change these rules.[1]
> a) The park can be used for events for up to 27 days between May 27 and September 15.
> b) A maximum of 22 days may involve amplified music. Amplified music does not include music from acoustic instruments which is subsequently amplified.
> c) No more than 18 of the 27 days may be Saturdays and Sundays.
> d) Events may occur on no more than three consecutive weekends.
> e) Sound will not exceed 85 decibels, measured at the perimeter of the park nearest the source of the sound. Sound may not exceed 75 decibels measured at the eastern edge of Lake Street adjacent to any residential or commercial property.
> f) The cutoff time for amplified music will be 9:45 PM Sunday through Thursday and 10:45 PM on Friday and Saturday.

(Land Use Permit 4C0863-1 at 5, filed Nov. 21, 2014 as Exhibit 2). This condition sets specific standards on the number, timing, and nature of events and maximum noise levels. There can be little question that Condition 19 was included to ensure compliance with Act 250 criteria and was critical to the issuance of the permit.

Based upon the above findings of fact, especially facts 11 through 14, the City made a sufficient showing that the amendment application is due to changes in circumstances regarding the use of Waterfront Park and the City's development plans that have occurred over the past 20+ years since the conditions were put in place. Appellant argues that these changes were foreseeable and were fully litigated during the 1994 proceedings. This is insufficient to establish that the City is merely trying to undermine or relitigate the conditions. The City is not seeking to abandon the conditions in their entirety and avoid the requirement that events at

---

[1] The language used by the Commission in establishing Condition 19 indicates that an amendment to the Condition was contemplated at the time it was imposed. That the Commission specifically mentioned the possibility of written permission to change Condition 19 weights strongly in favor of allowing for flexibility. This Court has, in dicta, stated that where a permit condition specifically contemplates a permit amendment Rule 34(E) may be inapplicable. See In re Zaremba Group Act 250 Permit, No 3-36-13 Vtec, slip op. at 12–13 (Vt. Super. Ct. Envtl. Div. Feb. 14, 2014) (Walsh, J.). The Court need not determine, however, whether the language used by the Commission in Condition 19 makes Rule 34(E) wholly inapplicable as the language of the condition in addition to all the factors enumerated in Rule 34(E) all support a finding that flexibility outweighs finality and the City may seek a permit amendment in this case.

Waterfront Park have no undue adverse impacts on the surrounding neighborhood. Rather, the City seeks to alter the conditions to better meet the changing needs of the City and the community. Based on the undisputed facts, the Court concludes that the City is not motivated by a desire to relitigate or undermine the 1994 Permit Amendment conditions. We therefore consider whether finality outweighs flexibility with regard to Condition 19.

The first three factors of Rule 34(E)(4) all relate to intervening changes between the time the condition was imposed and the time the permit amendment is sought. Factor (a) relates to "changes in facts, law or regulations beyond the permittee's control," factor (b) relates to "changes in technology, construction, or operations which necessitate the need for the amendment," and factor (c) relates to "other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition." 16-5 Vt. Code R. § 200:34(E). All three of these factors weigh in favor of flexibility.

First, while the relevant law and regulations, Act 250 and the NRB's Act 250 Rules, have not changed regarding noise impacts under Act 250 Criterion 8, conditions mitigating noise impacts have advanced considerably since the 1994 Permit Amendment was issued. Condition 19 refers to noise not exceeding "75 decibels" without reference to how this limit is to be measured. The Environmental Board, this Court, and the Vermont Supreme Court have all recognized that there are multiple ways to measure sound level and the impacts of sound on the surrounding area. See In re Application of Lathrop Ltd. P'ship, 2015 VT 49, ¶ 77, available at http://info.libraries.vermont.gov/supct/current/op2013-444.html. In 2000, the Environmental Board first used the Lmax standard for measuring and limiting the maximum noise at property lines and areas of frequent human use. Re: Barre Granite Quarries, LLC, No. 7C1079(Revised)-EB, Findings of Fact, Conclusions of Law, and Order at 80–81 (Vt. Envtl. Bd. Dec. 8, 2000). Furthermore, the City points to the Guidelines for Community Noise published in 2000 by the World Health Organization, based on research published and developed between 1995 and 1999, which informs how noise should be regulated based on the adverse health impacts noise can cause. These changes to the regulatory framework for addressing noise impacts weigh in favor of revisiting Condition 19 in light of modern noise regulation.

9

There have also been changes in the City's use of Waterfront Park in the past 20+ years. It is undisputed that in 1994 the City had just begun to host events at Waterfront Park. Significant funds have been expended between 1996 and the present to improve Waterfront Park. The events held at Waterfront Park have become an important element of the City's cultural life and are a major economic benefit to City businesses. The number and location of residential and commercial structures in the neighborhood surrounding Waterfront Park has also changed significantly since the 1994 Permit Amendment was issued. Given these changes, it is appropriate to revisit whether or not Condition 19 is the most effective way to mitigate any adverse impacts events at the Park may cause. This is a primary purpose of allowing for amendment of permit conditions. As the Supreme Court has noted, "[i]f existing permit conditions are no longer the most useful or cost-effective way to lessen the impact of development, the permitting process should be flexible enough to respond to the changed conditions." Stowe Club Highlands, 166 Vt. at 38.

Appellant argues that all of the changes in the use of Waterfront Park were foreseeable at the time of the 1994 Permit. While it is true that a change in fact or law may not always justify an amendment, especially "where the change was reasonably foreseeable at the time of permit application," our primary concern is "whether allowing the permit amendment is appropriate under the circumstances." In re Nehemiah Assocs., Inc., 168 Vt. 288, 294 (1998); Stowe Club Highlands, 166 Vt. at 40. The City may have been able to predict that demand for events at Waterfront Park would grow in the 20 years following the first use of the Park for that purpose. In fact, the City most likely hoped that this would be the case. Foresight alone does not overcome the conclusion that the changes in circumstances since the 1994 Permit Amendment justify consideration of whether Condition 19 is the most efficient and cost-effective way to minimize any adverse impacts caused by the City's use of Waterfront Park.

Subsection (d) of Rule34(E)(4) requires consideration of "other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans." This factor weighs in favor of flexibility. The 2014 City Municipal Development Plan supports consideration of ways to increase use of Waterfront Park while minimizing impacts on neighboring property owners. It states that the City should make

efforts to continue to support arts and entertainment and lauds the success of the signature events held at Waterfront Park and the positive impact those events have on the City and the region. Allowing consideration of the permit amendment the City now seeks furthers these policy goals. The proposed amendment also furthers the policy and goals of the PlanBTV planning document adopted by the City Council. That Plan includes the following:

> Waterfront Park has been wildly successful as a place to host important cultural, civic, and athletic events that bring thousands of people to Burlington's waterfront each year. These events celebrate our community and lakefront, expose new people to the city, and generate millions of dollars for the local economy. The continued evolution of Burlington's waterfront into a mixed-use area that is active year-round will require a careful balance of competing demands. Waterfront businesses and residents need to embrace the important community role played by the park and its many events, while waterfront event planners and organizers need to be sensitive to the impacts that event noise, lighting, and traffic congestion has on their neighbors.

(PlanBTV at 59, filed Dec. 22, 2014 as Attachment A to City's Exhibit 2). The Plan goes on to include that one way this goal can be accomplished is to "ensure noise levels stay in compliance with City ordinances and permits." Id. The most effective way to accomplish this goal is not precluding the City from seeking a permit amendment to facilitate the "continued evolution of Burlington's waterfront into a mixed-use area that is active year-round," but rather to consider through the Act 250 process whether such a goal can be implemented without undue adverse impacts on neighboring residents and what the best methods are, based on present-day circumstances, to mitigate impacts. This factor, therefore, weighs heavily in favor of flexibility.

Finally, Appellant argues that she reasonably relied on Condition 19 in purchasing her property on Lake Street, and therefore, factor (f) of Rule 34(E)(4) weighs in favor of finality. As noted above, Condition 19 specifically contemplates the opportunity for it being amended. Appellant's position that she relied on Condition 19 is therefore not reasonable.

For the reasons detailed above and considering the language of Condition 19 and all of the factors enumerated in Rule 34(E)(4), the Court concludes that flexibility is warranted under the circumstances and the City is free to seek an amendment to Condition 19.

### iii.    Condition 20

Condition 20 of the 1994 Amended Permit relates to sound monitoring to ensure that Condition 19 is complied with.  It states:

> The Parks and Recreation department shall enforce noise related rules by monitoring sound levels at the park at the park perimeter nearest to the site of festival tents where music is performed and at the perimeter of the park adjacent to any residential structures on an hourly basis during public events involving music performances.  On a monthly basis, the sound monitoring logs shall be sent for review to the City Health Officer.  The sound monitoring logs shall be sent on an annual basis to the Parks and Recreation Commission prior to the annual fall public hearing to review the Waterfront Park public events rules.

With regards to the portion of Condition 20 related to the location of noise monitoring, we conclude that flexibility is appropriate here for all the reasons stated above relating to Condition 19.  As the appropriate limitations on noise caused by events at Waterfront Park are considered, the appropriate location and timing for monitoring that noise should be also.  With regards to the requirements that monitoring logs be sent to the City Health Officer or the Parks and Recreation Commission, these conditions do not mitigate impacts on interests protected by Act 250 and thus were not critical to the issuance of the amended permit.  The City is therefore free to seek an amendment of Condition 20.

### Conclusion

Waterfront Park is an important attribute of the City of Burlington and the surrounding region.  Impacts on surrounding residential neighbors, including Appellant, must be considered and mitigated if the City wishes to alter its permitted use of Waterfront Park for festivals and other events.  The City is not, however, precluded from seeking a permit amendment in this case.

Given the changes in facts, technology, and how this Court, the Environmental Board, and the Supreme Court have assessed what limitations should be placed on noise-creating developments, it is appropriate to reconsider whether the permit conditions in the 1994 Amended Permit are the most appropriate and cost-effective way to mitigate impacts.  The language of the most important and substantive of those conditions indicates the possibility that it could be altered in the future, and therefore, flexibility is warranted in this case.

For all these reasons, Appellant's motion on her Question 1 is **DENIED** and the NRB's cross-motion for summary judgment on Appellant's Question 1 is **GRANTED**.  Act 250 Rule 34(E), also known as the <u>Stowe Club Highlands</u> doctrine, does not preclude the City from seeking an amendment to the conditions contained in Act 250 Permit 4C0863-1.

Electronically signed on May 08, 2015 at 09:18 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division